UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONNI RABIN, ET AL<br>*Plaintiffs* | : | CIVIL ACTION NO.:  3:03CV555(RNC) |
| v. | | |
| PATRICIA WILSON-COKER<br>Commissioner of the Connecticut<br>Department of Social Services, in her<br>Official capacity | : | |
| *Defendant* | : | DECEMBER 3, 2004 |

### MEMORANDUM IN OPPOSITION TO MOTION FOR FEES AND COSTS

Plaintiffs are moving for $206, 302.50 in attorneys' fees and $3,456.11 in costs for work done on the Rabin case.  Plaintiffs seek compensation for the time expended by six attorneys: Shelley White, Sharon Langer, Greg Bass, Lucy Potter, Joanne Gibau, and Sheldon Toubman. Plaintiffs informally produced statements of the attorneys as to their time expended, which statements were not attached to plaintiffs' motion, but are attached hereto as Exhibit A.  The statements are not original time records, but instead appear to be compilations that are presumably based on original time records.  Plaintiffs assert in their motion that, "All time that was exclusively devoted to the prosecution of plaintiffs' claim under 42 U.S.C. § 1396a(a)(8), on which plaintiffs obtained no judgment from the Court, and which was not part of plaintiffs' appeal, has been excluded from plaintiffs' attorneys fees request." Pl Motion, ¶8 (emphasis added).  Plaintiffs request that Attorneys White and Bass be compensated at the rate of $275.00 per hour, and that the other four attorneys be compensated at the rate of $250.00 per hour.

Plaintiffs obtained preliminary relief in the form of a temporary restraining order on a due process claim related to the adequacy of the notices of action that were originally issued to implement the reductions in the income eligibility limit for the family coverage group and the

elimination of the Continuous Eligibility and the Guaranteed Eligibility coverage groups. That claim was "mooted out" when the Department revised its notices in a following month.

Plaintiffs also made an "ex parte review claim," predicated upon 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930, that the Department had failed to meet its purported obligation to review each case to determine whether it could qualify under another "coverage group" before terminating assistance. The <u>Department</u> <u>prevailed</u> on this claim in the District Court, and <u>no</u> <u>appeal</u> was taken by plaintiffs from that part of the judgment. As a result, approximately six thousand individuals who were receiving benefits under either the Continuous Eligibility or Guaranteed Eligibility groups lost assistance due to the elimination of those coverage groups (unless they were found eligible by the Department under another coverage group due to the use of processes that the Court found sufficient).

The Department initially prevailed in the District Court on the third claim, related to whether a loss in eligibility under Connecticut's 1931 coverage group due to a statutory reduction in the income eligibility limit is "because of earnings from employment" that qualifies the family for a temporary extension in Medicaid eligibility under the Transitional Medical Assistance ("TMA") coverage group. 42 U.S.C. § 1396r-6. The plaintiffs, however obtained an injunction pending appeal in the Second Circuit, and ultimately prevailed on the merits of this claim. Even here, it should be noted that the Second Circuit did not accept plaintiffs' "plain meaning" argument, but nevertheless ruled in favor of the plaintiffs, notwithstanding its acknowledgement that the language of the statute was ambiguous and its acknowledgement that

2

both the legislative history and the federal administrative interpretation supported the Department's position.[1]  362 F.3d 190 (2d Cir. 2004).

The issue on which plaintiffs did prevail is essentially a pure question of law, i.e., whether plaintiffs were entitled to TMA benefits under 42 U.S.C. § 1396r-6 when they lost eligibility for assistance as a result of the statutory reduction in the § 1931 income limit, as long as they had at least some earnings from employment?  In contrast, the "ex parte review" claim under 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. 435.930 is predicated both on different claims of law (the obligation to determine eligibility with "reasonable promptness," 42 U.S.C. § 1396a(a)(8), and to "furnish Medicaid promptly to recipients without delay," 42 C.F.R. 435.930, <u>and upon claimed operative facts that have no relevance to the TMA claim</u>.  Specifically, plaintiffs claimed that the Department had insufficiently reviewed the facts of each case to determine whether the family remained eligible for assistance under another coverage group.  The focus of the <u>factual inquiry</u>, therefore, in the "ex parte review" claim was what steps had the Department taken to review whether these clients remained eligible under a different coverage group as a result of their loss in eligibility under the Continuous Eligibility, Guaranteed Eligibility, or the § 1931 coverage groups.

## **LEGAL STANDARDS APPLICABLE TO FEE AWARDS**

The defendant acknowledges that plaintiffs prevailed and are entitled to a reasonable attorney fee.  The fee determination requires a determination of how much time was reasonably

---

[1] The Second Circuit ruled in favor of the plaintiffs based upon its finding that the Act's "purposes" supported plaintiffs position.  Curiously, the Second Circuit did not ascertain the Act's "purposes" from the language employed by Congress, or from its legislative history or administrative interpretation.  Instead, it solely relied upon the findings of another court that had interpreted a different, but related, statutory provision in 1984, notwithstanding that the Act had been amended several times in important respects in the intervening years.  <u>Rabin</u>, 362 F.3d at 198, 199.

expended on their successful claim and a fair rate of hourly compensation. Plaintiffs bear the burden of demonstrating how much time was reasonably and necessarily expended on their successful claim. This Court is expected to review the application carefully, and to exclude time that was "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

1. "lodestar"/burden of proof.

In Hensley, the United States Supreme Court instructed that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Exkerhart supra, 461 U.S. at 433. "Calculation of this basis, generally referred to as the 'lodestar,'…requires the court to determine the number of hours reasonably spent on the litigation and to exclude hours that 'were excessive, redundant, or otherwise unnecessary.'" Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1977) (citations omitted). To establish entitlement to an attorney's fees awarded, plaintiff bears the burden of proving both the reasonableness of the requested hourly rate and the hours expended. New York State Assn. for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 11309.

2. Role of the Court.

This Court is required to conduct a careful review in order to ensure any fee award is reasonable. "The task of determining a fair fee requires a fee of the applicationconscientious and detailed inquiry into the validity of the representations [of the attorney for a prevailing party] that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). The reviewing court must "examine the hours expended by

counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of the case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from further efforts… . In making this examination, the … court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions of the parties." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (quoting DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985)).

The Second Circuit has further warned that "attorney fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." New York State Assn. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983) (citations omitted).

3. Obligation of the Moving Party to Document the Time that was Reasonably Spent on the Successful Claim.

The plaintiffs, as the moving parties, bear the burden of documenting the time that was reasonably and necessarily spent on their successful claim.

    a.  Contemporaneous Time Records.

It is well-settled that an essential requirement for any application for attorney's fees is the submission of time records which accurately reflect the time expended, by whom, and for what, so that the Court can acquit itself of its responsibility to determine whether the claimed hours expended were reasonable. Haley v. Pataki, 106 F.3d 478, 484 (2d Cir. 1997) (citations omitted). The "burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for and the amount of time reasonably required; where adequate contemporaneous records have not keen kept, the court should not award the full

5

amount requested." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d cir. 1987).

      b. Vague Entries.

It is by now axiomatic to the law governing the review of attorney's fees petitions that fees should not be awarded for billing entries when the corresponding description of the work is "vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended." Grogg v. General Motors Corp., 612 F.Supp. 1375, 1380 (S.D.N.Y. 1985). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Echerhart, supra, 461 U.S. at 437. A list of dates and hours on which "research" was performed has been held insufficient. See, e.g., Ragin v. Harry Macklowe Real Estate Co., 870 F.Supp. 510, 520 (S.D.N.Y. 1994) (finding insufficient such entries as "research for brief," "draft and edit brief," "telephone call to S. Berger," and "review Macklowe files").

      c. "Bundled" Items.

Many of the individual entries of plaintiffs' counsel do not pass muster under Hensley v. Eckerhart, supra, because they contain descriptions of multiple services. Thus, it has been held that "[t]his 'bundling' or commingling of several tasks in one time entry prevents the court from assessing the length of time counsel spent on each task. Absent such specificity, it is difficult for the court to determine whether the time spent on a particular task was reasonable." Gilmore v. Bergin, et al. Civ. No. 3:95 CV 01838 (DFM), 1998 U.S. Dist. LEXIS 22918 (D.Conn. 1998) at p. 9, citing Soler v. G&U, Inc., 801 F.Supp. 1056, 1061 (S.D.N.Y. 1992).

4. Time Spent on Unsuccessful Claims.

  In calculating the lodestar amount, this Court is required to exclude from the application those hours spent by plaintiffs' counsel in pursuing unsuccessful claims unless the plaintiff

6

demonstrate that the successful and unsuccessful claims were "inextricably intertwined." Unsuccessful claims that are unrelated to the successful claims must "be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Hensley v. Echerhart, supra, 461 U.S. at 434.

The Second Circuit has summarized the two step test enunciated in Hensley v. Echerhart, supra, to determine whether a downward adjustment of the lodestar figure is required as follows:

> [A] step one … the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on unsuccessful claims should be excluded from the calculation (citations omitted). At step two, the district court determines whether there are any unsuccessful claims <u>interrelated with the successful claims</u>. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. If a plaintiff has obtained excellent results, however, the attorneys should be fully compensated.

Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992). (emphasis added)

Plaintiffs maintain in their brief at 6, 7 that they are entitled to compensation for essentially all time expended in this case, notwithstanding that they were unsuccessful on their "ex parte review" claim based upon 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930. Plaintiffs purport to have self-disallowed only that time that was <u>exclusively</u> spent on their unsuccessful claim. Plaintiffs maintain that they are entitled to full compensation for all of their other time, including time that was at least partially attributable to their unsuccessful claim, because of the "excellent results" obtained on their successful claims. It is clearly established, however, that a court may not proceed to "step two" under the Hensley analysis and consider an award of fees for plaintiffs' unsuccessful claims based upon the degree of success achieved on the successful claims unless the successful and unsuccessful claims are integrally interrelated, arising out of the same operative facts. Indeed, the very cases cited by plaintiffs clearly indicate that fees may be awarded for all time reasonably expended, even on the unsuccessful claims, <u>only if the</u>

7

successful and unsuccessful claims are predicated upon the same operative facts.  See, Hensley, 461 U.S. at 435, 435 (counsel's work on "one claim will be unrelated to his work on another claim" where the legal claims are different and arise out of "different facts and legal theories"); Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) ("A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof"); Dague v. City of Burlington, 935 F.2d 1343 1359 (2d Cir. 1991) ("When the issues are intertwined factually, a fully compensatory fee amount is justified") In accord, See Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101 (2d Cir. 1992) (reduction not required when each claim against the defendant arises out of the same "core of facts").

Where the prevailing party succeeds on only some of its claims, and the claims are not factually intertwined, the time spent on the unsuccessful claim must be excluded.  Hensley teaches that "there is no precise rule or formula for making these determinations" and instructs that "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success."  Hensley v. Eckerhart, supra, 461 U.S. at 436- 37.

5.  Reasonable hourly rate

A reasonable hourly rate is one "in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputations."  Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541 (1984).  A reasonably attorney's fee is one that is "adequate to attract competent counsel, but … [does] not produce windfalls to attorneys."  Id., at 897.

When assessing plaintiffs' fee petition the Court must also be mindful of the Second Circuit's opinion in Cohen v. West Haven Brd. Of Police Commissioners, 638 F.2d 496, 505 (2d Cir. 1980) which sanctioned the district court's use of different hourly rates based on the type of service performed.  In Cohen, hourly rates were highest for trial time but were reduced by more than half for research, interviews and conferences.  Id. at p. 505, n. 14.  Similarly, the Third Circuit Court of Appeals has stated "[a] fee applicant cannot demand a high hourly rate … and then run up an inordinate amount of time researching the same law.  Double dipping, in ay form, cannot be condoned."  Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983).

Similarly, in Rainey v. Philadelphia Housing Authority, 832 F. Supp. 127, 130 (E.D. Pa. 1993), the Court commented that there should be an inverse relationship between the attorney's hourly rate and the number of hours reasonably expended.  ("The higher the allowed hourly rate commanded based on skill and experience, the shorter the time it should require an attorney to perform a particular task.")[2]

6.  Costs

A prevailing party may recover reasonable out of pocket expenses incurred during the litigation if such expenses are normally charged to fee paying clients.  See, LeBlanc – Sternberg v. Fletcher, 143 F. 3d 748, 763 (2d Cir. 1998).  As the moving party, however, plaintiffs bear the burden of establishing the amount, reasonableness, and necessity of such expenses.  Furthermore, plaintiffs bear the burden of establishing that such expenses would normally be charged to fee paying clients.

**APPLICATION OF LEGAL STANDARDS TO THE FACTS OF THIS CASE**

---

[2]  This admonition is particularly apropos here because counsel seek a generous hourly rate but spent an excessive amount of time consulting with each other.

Applying the foregoing legal standards to the facts of this case requires a substantial reduction from the amount requested.

1. <u>Mathematical errors</u>.

In some cases, the number of hours claimed is over-stated, in excess of the time reflected on the submitted time records. Specifically, based upon the defendant's calculations, the time claimed by Attorneys Toubman, Potter and Langer is overstated by 10.6, 2.1, and 0.2 hours, respectively in comparison to the hours actually reflected on the submitted time statements.[3] For the convenience of the Court, the hours claimed versus the hours actually reflected on counsel's submitted time statements is reflected on the attached Exhibit B. Exhibit B also separately indicates counsel's reported time expended prior to June 9, 2003 from counsel's time expended after 6/9/2003 for purposes of allowing deductions for time expended on the unsuccessful claims.

2. <u>Failure to Adequately Document Time Expended – Including the Use of Vague and Bundled Entries</u>.

Counsel repeatedly make "bundled" entries where more than one task is bundled together on the same time entry. Furthermore, counsel repeatedly make vague entries, such as "review complaint"" and "work on brief," where it is impossible to tell whether counsel was working on a claim that was successful or unsuccessful. As a result of counsel's failure to keep time records that are sufficiently precise, it is difficult if not impossible to clearly determine the time expended on successful claims as opposed to on unsuccessful claims. The amount of hours allowed should, therefore, be reduced as a result of the inadequacy of plaintiffs' time records (in addition to being reduced to its allow time spent on unsuccessful claims). See, <u>Cabrera v. Wilson-Coker</u>, No. 3:97CV02297(RNC) (September 30, 2003 Ruling on Plaintiff's Motion for

---

[3] In one case, Attorney White, her hours are under-reported by 3.5 hours.

Award of Attorney's Fees and (costs), Exhibit C, where this Court reduced counsel's hours by 10 per cent to account for vague entries and by 10 per cent to account for bundled entries, in addition to making other reductions.

The defendant suggests that plaintiffs' claimed hours be reduced by a factor of ten per cent on account of their inadequate time records, including the use of vague and bundled entries.

3.  <u>Unnecessary, Excessive and Redundant Time Expended by Six Counsel</u>.

In determining the number of hours that were reasonably and necessarily expended on plaintiffs' successful claims, the courts in this district have been particularly diligent in reviewing applications where more than one attorney was involved in prosecuting the action. See, <u>Otera v. Housing Authority of the City of Bridgeport</u>, No. 3:98CV1935(PCD) (March 7, 2003), 2003 U.S. Dist,. LEXIS 177706 (Dorsey, J.) (denying fees for 2nd chair at trial); <u>Oliver v. Cole Gift Centers, Inc</u>., No. 3:97CV02595(GLG) 1999 U.S. Dist. LEXIS 20547 (December 24, 1999) (Goettel, J.) (disallowing majority of time claimed by a "supervising attorney"); <u>DeLeon v. Little and Hartford</u>, No. 3:94 CV902 (RNC), 2000 U.S. Dist. LEXIS 18378 (March 2, 2000) (Chatigny, J.) (compensation for more than two attorneys denied in the absence of a demonstration of necessity, where the additional attorneys were not known to the Court to have been actively involved in trial and pre-trial proceedings and one of the additional attorneys had not filed an appearance); <u>Fabri v. United Technologies</u>, 387 F.3d 109 (2nd Cir. 2004), 2004 U.S. App. LEXIS 21943 (ruling that District Court had wide discretion to determine the number of attorneys that were reasonably necessary to prosecute a claim in upholding the refusal to award fees for a <u>third</u> attorney).

11

In this case, plaintiffs seek compensation for the time that was expended by <u>six</u> attorneys. Furthermore, plaintiffs seek to be compensated at generous rates for the time that was expended by all six attorneys[4]

Referring to the tasks performed by each counsel, as indicated on plaintiffs submitted time statements, Attorneys White and Langer appear to have been "co-lead counsel" at the trial court level, as evidenced by the fact that they each conducted the (two) depositions, examined witnesses at the evidentiary hearings, and made oral argument at the hearings and on the motion for an injunction pending appeal.

Attorney White appears to have been lead counsel on appeal, as evidenced by her time records which indicate that she did the bulk of the appellate briefing. Attorney White also argued both the motions for an injunction pending appeal and the merits of the appeal in the second circuit.

Attorney Potter appears to have been the "<u>third</u> seat" at the district court level, as evidenced by the fact that she personally attended the depositions and assisted the co-lead counsel at the evidentiary hearing by sitting at counsel table. Her time records also indicate that she personally played a role drafting and amending the complaint and the briefs in this action (in addition to spending excessive time "consulting", "meeting" and "reviewing,)".

By contrast, the roles of Attorneys Bass and Toubman appear to have been consultative only, as evidenced by their repeated entries indicating time spent corresponding to co-counsel, reviewing papers that were drafted by co-counsel, and meeting with co-counsel. Five of the six attorneys, including Attorney Bass, claim at least six and one-half hours for their appearance in court at the preliminary injunction/summary judgment hearing of May 6, 2003; however

---

[4] The rates claimed also appear to be excessive, in excess of the rates recently awarded in this

12

attorney Bass played no role in that hearing and, indeed sat in the visitor's section of the courtroom for much, if not most, of the proceeding. Indeed, almost all of Attorney Bass's time records reflect time spent consulting with and reviewing the work product of co-counsel, as opposed to performing legal services directly, himself.

Attorney Toubman not only played a primarily "consultative role," he did not even file an appearance in this action as a counsel for plaintiffs. Accordingly, it can not be said that he acted as an "attorney" for plaintiffs who can receive an award of fees under § 1988.

Finally, the role of Attorney Gibau appears to have been primarily limited to procuring one of the named plaintiffs, Maritza Avila, and preparing her affidavit. Her fee request is more modest – for 26.15 hours. However, she claims six and three-quarter hours for attending the May 6, 2003 hearing, even though she played no active role at that hearing, in addition to requesting fees for time spent "conferring" and "meeting" with co-counsel.

The services of all these attorneys would clearly not be billed to a paying client, in the exercise of "billing judgment," especially considering the inordinate amount of time spent conferring and consulting with each other. The defendant, therefore, should not be liable for fees attributable to attorneys whose participation was not reasonably necessary to prosecute the action. Otera, supra; Oliver, supra; Leon, supra; and Fabri, supra. The defendant therefore submits that the hours of attorneys Bass, Toubman and Gibau as the fourth, fifth, and sixth attorneys on the case should be excluded in their entirety since plaintiffs have not demonstrated that there services were necessary. Furthermore, the hours of attorney Potter, as "third seat," should be cut in half in the absence of a demonstration that it was reasonably necessary to have more than two attorneys work on this matter.

---

District to "partners" who were active federal court litigators in § 1983 actions, discussed infra.

13

4. <u>Time Spent On Unsuccessful Claims</u>.

As noted <u>supra</u>, plaintiffs aver in their motion that "time that was <u>exclusively</u> devoted to the prosecution of plaintiff's claim under 42 U.S.C. ¶ 1396a(a)(8), on which claim plaintiffs obtained no judgment from the Court … has been excluded from plaintiffs' attorneys' fees request." Pl. Motion, ¶ 9 (emphasis added).

Plaintiffs' representation that the time that was <u>exclusively</u> spent on the unsuccessful "ex parte review"claim was excluded is incorrect, at least in some respects. See, for example, the entry of Lucy Potter, Esq., for March 19, 2003 claiming 3.2 hours for "research re private right of action under 435.930," and the entries of Sharon Langer, Esq., for March 19, 2003 and April 9, 2003, claiming .1, and .1 hours for activities that include a "phone call with potential CE plaintiff." These entries explicitly relate only to the "ex parte review" claim, which was unsuccessful.

More importantly, however, plaintiffs repeatedly claim time for time spent on activities where it is impossible to tell whether the time was expended on successful or on unsuccessful claims. The overwhelming majority of the entries do not delineate between the time spent on successful TMA claim, as opposed to time spent on the unsuccessful <u>ex parte review</u> claim when counsel were engaged in activities that include drafting and reviewing the Complaint, "litigation team meetings," briefing and reviewing memoranda related to class certification, preliminary injunction, conducting depositions, attending the May 6, 2003 hearing, and briefing the summary judgment motion.

The TMA claim on which plaintiffs ultimately prevailed is a pure question of law. The majority of the undifferentiated time spent in the District Court prior to June 9, 2003, therefore, was presumably expended on the unsuccessful "ex parte review claim," which involved

questions of fact. Furthermore, as noted supra, it is plaintiffs' obligation to document the extent to which counsel's time was spent on successful versus unsuccessful claims, which plaintiffs have failed to do. The ex parte review claim is clearly predicated upon separate and distinct operative facts from the TMA claim. This is not a case, therefore, where the claims of fact and law are so factually intertwined that compensation is allowed for all time reasonably expended, depending on the degree of success achieved. An adjustment to disallow compensation for the time spent on unsuccessful claims is, therefore, required.

The defendant submits that an appropriate adjustment in this case is fifty percent of all hours expended by counsel before June 9, 2004. This results is in the exclusion of 62.75 hours claimed by Attorney White, (plus 3.25 for travel) 67.8 hours claimed by Attorney Langer (plus 2.6 for travel, and 58.5 hours claimed by Attorney Potter.[5]

5. Reasonable hourly rate.

As the moving party, plaintiffs must "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 N.11, 104 S.Ct. 1541 (1984). In this case, no evidence of prevailing rates for similar lawyers was submitted[6]. Even if evidence of prevailing rates had been submitted, however, this Court is free to rely on its knowledge of rates charged in the community, and is not limited to ruling based upon the submitted evidence. Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2nd Cir. 1987).

---

[5] This analysis assumes that all hours requested by attorneys Bass, Toubman, and Gibau are excluded because it was not reasonably necessary to staff this case with a fourth, fifth, and sixth attorney.

[6] Plaintiffs indicate that affidavits will be submitted later if the hourly rates are disputed.

15

Plaintiffs request that Attorneys White and Bass be compensated at $275 per hour, and that the four other attorneys be compensated at $250 per hour. Plaintiffs claimed hourly rates are excessive, as demonstrated by a review of recent decision in this district awarding fees. See, Fabri v. United Technologies 387 F.3d 109 (2nd Cir. 2004) (approving District Court's award of $225.00 per hour for partner time and $150.00 per hour for associate time). Otero v. Housing Authority of City of Bridgeport, No. 3:98CV1935(PCP) (March 7, 2003), 2003 U.S. Dist. LEXIS 17706 (awarding $175 per hour to partners in a employment termination/due process/equal protection/pendent state claims jury trial case); DeLeon v. Little, No. 3:94CV902, 2000 U.S. Dist. LEXIS, March 2, 2000 (RNC) (D.Conn. 2000) (awarding $175 per hour to counsel experienced in litigating § 1983 actions).

Furthermore, the hourly rate can be adjusted by consideration of a number of factors, including the difficulty of the questions and the skills requisite to perform the services. Plaintiffs ultimately prevailed on a claim of law. The Second Circuit held that the question was close, but ultimately ruled in favor of plaintiffs, after first rejecting plaintiffs' argument that they were entitled to prevail based upon the "plain language" of the statute. The legal skills of researching, writing, and making oral argument are not particularly novel. More importantly, plaintiffs are seeking compensation for an inordinate and excessive number of hours spent "consulting," "conferring," "reviewing," "meeting," "listening," and "observing." The defendant suggests substantial cuts from the hours claimed as a result of the expenditure of unnecessary time; however, to the extent that a portion of the time spent is compensated, the hourly rate should also reflect the nature of the activities that were actually conducted by counsel.

Considering the totality of the circumstances, including the hourly rates that have recently been awarded in this district and the actual nature of the activities conducted by counsel, the defendant suggests that fees be awarded on the basis of the following hourly rates:

        White    -    $225
        Langer   -    $200
        All others -   $175[7]

## **CONCLUSION**

After applying the foregoing factors, the defendant suggests a total award for fees and costs of $68,291.11 calculated by: 1) correcting the mathematical errors on plaintiffs' submitted time statements; 2) excluding the time of attorneys Toubman, Bass, and Gibau; 3) reducing attorney Potter's time by one-half (as not fully necessary "third seat"); 4) reducing the time expended by attorneys White, Langer, and Potter prior to 6/9/03 by a factor of one-half to account for the time expended on unsuccessful claims; 5) reducing the allowable hours by an additional factor of ten per cent on account of inadequate time records; and 6) by allowing $3,456.11 in claimed costs.[8]

---

[7] Attorney White warrants a higher fee than attorney Langer in light of her greater level of experience litigating similar claims and her lead role on the successful appeal. However, Attorney Langer warrants a higher fee than the other counsel in light of her role as co-lead counsel at the trial court, with the increased responsibility inherent thereto, including making argument and examining witnesses. The suggested rate of the other counsel is based on a review of the tasks that they actually performed which, in the opinion of the defendant, warrant a substantially reduced fee, to the extent that the services are compensable at all. The suggested reduced rate for other counsel is not intended to denigrate in any way the knowledge, experience, and ability of the other counsel, but is based on an assessment of their actual role in this case.

[8] The foregoing computations are summarized on the attached chart, Exhibit D.

DEFENDANT
PATRICIA WILSON-COKER
Commissioner of the Connecticut
Department of Social Services, in her
Official capacity

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:   /s/_____
      Hugh Barber
      Assistant Attorney General
      Federal Bar No. ct05731
      55 Elm Street, P.O. Box 120
      Hartford, CT  06141-0120
      Tel: (860) 808-5210
      Fax: (860) 808-5385

**CERTIFICATION OF SERVICE**

      I hereby certify that a copy of the foregoing **Memorandum In Opposition To Motion For Fees And Costs** was mailed, first class postage prepaid, this 3rd day of December 2004 to:

Sharon Langer, Esq.
Connecticut Legal Service, Inc.
587 Main Street
New Britain, CT  06051

Lucy Potter, Esq.
Greater Hartford Legal Aid
999 Asylum Avenue, 3rd Floor
Hartford, CT  06105

Greg Bass, Esq.
Greater Hartford Legal Aid
999 Asylum Avenue, 3rd Floor
Hartford, CT  06105

Joanne G. Gibau, Esq.
New Haven Legal Assistance Association
426 State Street
New Haven, CT  06510

Shelley A. White, Esq.
New Haven Legal Assistance Association
426 State Street
New Haven, CT  06510

                                    /s/_____
                                    Hugh Barber
                                    Assistant Attorney General