UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 SEP 30  P 11: 38

U.S. DISTRICT COURT
HARTFORD CT

PAM CABRERA,         :

    Plaintiff,    :

V.                   :  CASE NO. 3:97CV2297(RNC)

PATRICIA WILSON-COKER and   :
STATE OF CONNECTICUT DEPARTMENT :
OF SOCIAL SERVICES,  :

    Defendants.   :

### RULING AND ORDER ON PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

Plaintiff's motion for an award of attorney's fees and costs is granted in part and denied in part.

I.  Background

Plaintiff Pam Cabrera, a white female, is a longtime employee of the State of Connecticut Department of Social Services ("DSS"). In the early 1990s, she began complaining to supervisors that black employees in a particular unit were not being held to the same standards of conduct and performance as white employees. In 1996, after determining that nothing was being done to address this perceived problem, she filed a complaint with the Auditors of Public Account concerning certain DSS employees and supervisors. She was subsequently transferred to the unit that was the subject of her initial complaint to her supervisors.

Plaintiff filed a grievance opposing the transfer and then brought this suit against DSS and Patricia Wilson-Coker, a DSS

regional administrator, claiming that she was being subjected to adverse treatment because of her race and "whistleblower" complaint in violation of her rights under the First and Fourteenth Amendments, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.[1] Plaintiff complained that the defendants had transferred her, denied her request to use sick leave while recuperating from medical procedures, changed her work hours, denied her promotions, and reprimanded her. The complaint sought compensatory and punitive damages, as well as injunctive relief.

Plaintiff later amended the complaint to allege instances of retaliation that occurred after she brought this action. The amendment included a claim that intolerable working conditions had forced her to leave her position and take a position in another unit of DSS at a lesser grade and salary. Plaintiff claimed that this constructive demotion was due to her earlier complaints.

After extensive discovery, defendants moved for summary judgment on all counts of the amended complaint. Plaintiff responded with a very lengthy opposition brief. The motion was denied in a bench ruling. Efforts to settle the matter were unsuccessful and the case proceeded to a jury trial.

After a three week trial, the jury found for the plaintiff on her claim that she had been constructively demoted by the

---

[1] Subsequent to filing this action, plaintiff also brought claims against defendants with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). She eventually received a right to sue notice from the EEOC.

defendants for complaining about race discrimination. No damages were awarded against Wilson-Coker under 42 U.S.C. § 1983 because the jury was persuaded that Wilson-Coker would have acted as she did with regard to the plaintiff even if the plaintiff had not engaged in activity protected by the First Amendment. Damages were awarded against DSS under Title VII for lost salary and benefits in the amount of $5,030. Plaintiff's claims were otherwise unsuccessful.

After the trial, the parties reached a stipulated agreement that restored plaintiff to her previous position and an injunction was entered accordingly.

Plaintiff now seeks an award of attorney's fees under Title VII in the amount of $180,527.50 and $6,964.65 in costs.

II. Discussion

The prevailing party in a Title VII case is entitled to an award of reasonable attorney's fees. 42 U.S.C. § 2000e-5(k). The guidelines applicable to an award of attorney's fees under Title VII are the same as those applied in fee award cases under 42 U.S.C. § 1988. See Lyte v. Sara Lee Corp., 950 F.2d 101, 103 (2d Cir. 1991).

The starting point for determining the fee that should be awarded is the calculation of the lodestar amount, which is arrived at by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). See Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). Reasonable attorney's fees

also include reasonable out-of-pocket expenses ordinarily charged to clients. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).

To enable a court to calculate the lodestar amount, the fee applicant must support her application with contemporaneous time records specifying the date, hours expended, and nature of work performed. See Hensley, 461 U.S. at 437 & n.12. Hours that are excessive, redundant, or otherwise unnecessary should be excluded. See id. at 434. In addition, a prevailing party is not entitled to a fee for time spent prosecuting unsuccessful claims if those claims are unrelated to the claim on which the party prevailed. See id. at 434-35.

The lodestar should be based on prevailing market rates for attorneys of comparable skill, experience, and reputation. See Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998). When services are provided over many years, the objective of providing adequate compensation may call for use of current rather than historic hourly rates to compensate for delay in payment. See Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998).

    A.    Calculating the Lodestar

    1.    Reasonable Hourly Rates

The parties disagree as to the hourly rates that should be used to calculate the lodestar. Based on my knowledge of the market for legal services in the Hartford area, I find that employment lawyers with substantial experience litigating claims

4

under § 1983 and Title VII comparable to that of plaintiff's counsel have been compensated for their services in the range of $175 to $275 per hour. Based on the affidavits provided by plaintiff's counsel, I further find that during the years she worked on this case her regular hourly rate gradually increased from $225 to $300. Taking these facts into account, I conclude that plaintiff's counsel should be compensated at the rate of $250 per hour for services rendered from 1997 through 1998, and at the rate of $275 per hour for services rendered from 1999 through 2001.

Defendants contend that plaintiff's counsel should not be compensated at the applicable hourly rate for time spent traveling and waiting for the jury verdict. I agree. Though travel and waiting are unavoidable in litigation, time spent doing these things does not deserve to be compensated at a full hourly rate. While traveling and waiting, counsel can and often do give attention to other matters. Accordingly, I find that travel time should be charged at 50 percent of the applicable hourly rate. See <u>Sea Spray Holdings, Ltd. v. Pali Financial Group</u>, No. 03 Civ. 1988, 2003 WL 21939701, *3 n.5 (S.D.N.Y. August 13, 2003). I also find that time spent waiting for the jury verdict should be treated similarly.[2]

---

[2] Defendants contend that plaintiff's counsel should not be compensated at a full hourly rate for legal work she could have delegated, such as legal research and reviewing information produced in discovery. I am persuaded by plaintiff's counsel's explanation that it was not unreasonable for her to do the work
(continued...)

During the course of her work on the case, plaintiff's counsel was assisted to a very limited degree by a law clerk and an associate whose billing rates were $58 per hour and $125 per hour, respectively. I find that these rates are reasonable for the services they performed.

2. Hours Reasonably Expended

The lodestar calculation requires a determination of the number of hours reasonably expended by plaintiff's counsel. The court is expected to exclude from the calculation hours that were not reasonably expended, including time spent on work that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The revised invoice submitted by plaintiff's counsel bills a total of 665.6 hours.[3] Defendants contend that this total should be reduced for a variety of reasons. I am persuaded that the defendants' argument is correct in some respects.[4]

---

[2](...continued)
herself and therefore decline to make the requested adjustments.

[3] That total includes 655.9 hours of work performed by plaintiff's counsel, 9.1 hours of work performed by a law clerk and .6 hours of work performed by an associate. For each year, plaintiff's counsel performed the following work: in 1997, 5.9 hours; in 1998, 135.9 hours; in 1999, 99.1 hours; in 2000, 147.3 hours; and in 2001, 267.5 hours.

[4] Defendants contend that the total number of hours plaintiff's counsel claims to have spent on the case should be reduced by 10 percent because the billing system she used is unreliable. I am not persuaded. Defendants point to two errors in the original twenty-eight page invoice, and one error in the revised invoice. In my opinion, these errors are insufficient to support a finding that the billing system as a whole is unreliable.

Defendants contend that some of the billing entries are too vague to permit a determination of whether the charges are in fact reasonable. Plaintiff's counsel "is not required to record in great detail how each minute of [her] time was expended." Hensley, 461 U.S. at 437 & n.12. But the "burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987) (rejecting time records with one description for an entire day's work).[5] Plaintiff's counsel's revised invoice contains numerous entries for telephone conferences with unidentified persons on subjects that are not described, for review of unspecified documents with no stated purpose, and for preparation for conferences without any elaboration. These entries are too general to permit adequate analysis of the reasonableness of the hours expended. I find that this insufficiency in the billing records warrants a 10 percent reduction in the total number of hours expended each year.

---

[5] See also G.M. v. New Britain Bd. of Educ., 2000 WL 435577, *5 (D. Conn. March 8, 2000) (reducing lodestar by 20 percent because entries such as "preparation for hearing," and "work on appeal brief" were inadequate); Mr. & Mrs. B. v. Weston Bd. of Ed., 34 F. Supp. 2d 777, 781 (D. Conn. 1999) ("Entries stating such vague references as 'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter.")

7

Defendants further contend that the court should disallow all of plaintiff's counsel's "bundled" entries on the ground that they "impede[] the court's efforts to evaluate the reasonableness of any of the listed activities." Soler v. B & U, Inc., 801 F. Supp. 1056, 1061 (S.D.N.Y. 1992). I agree. Many of the entries in the revised invoice contain bundled entries of multiple tasks. I find that this defect in the billing records warrants another 10 percent reduction in the total hours expended each year.[6]

Finally, defendants claim that plaintiff's counsel's practice of billing in minimum increments of two-tenths of an hour warrants a downward adjustment in the number of hours that should be included in the lodestar. Here again, I agree. To my knowledge, the minimum increment ordinarily used to bill for legal services in Connecticut is one-tenth of an hour, not two-tenths. See Mulligan v. Rioux, No. 14648, 1996 WL 614817, *5 (Conn. Super. Ct. October 11, 1996); see also Cowan v. Ernest Codelia, P.C., No. 98 Civ. 5548, 2001 WL 30501, *8 (S.D.N.Y. January 12, 2001) (increments of .25 too large); In re Wildman, 72 B.R. 700, 726 (Bankr. N.D. Ill. 1987) (increments of .2 too large). The revised invoice includes sixty-five entries for two-tenths of an hour, totaling thirteen hours. I find that this total should be reduced by 50 percent.

---

[6] As a result of this 20 percent reduction for vague and bundled entries, 1.2 hours are deducted from the total hours spent in 1997; 27.2 hours are deducted from the total hours spent in 1998; 19.8 hours are deducted from the total hours spent in 1999; 29.4 hours are deducted from the total hours spent in 2000; and 53.6 hours are deducted from the total hours spent in 2001.

After these adjustments, the revised yearly totals of hours expended by plaintiff's counsel are: for 1997, 4.4 hours; for 1998, 105.85 hours; for 1999, 76.25 hours; for 2000, 114.1 hours; and for 2001, 201.7 hours.

3. The Lodestar Calculation

Based on the foregoing, the lodestar calculation is as follows: for 1997 and 1998, 110.25 hours multiplied by $250; and for 1999-2001, 392.05 hours multiplied by $275, plus 9 hours multiplied by $58 (reflecting the work of a law clerk), plus .6 hours at a rate of $125 (reflecting the work of an associate). This yields a lodestar of $135,973.25.

B. Adjusting the Lodestar

There is a strong presumption that the lodestar figure represents a reasonable fee. See Quaratino, 166 F.3d at 425. However, the lodestar may be adjusted on the basis of several factors, including the "'results obtained.'" Id. (quoting Hensley, 461 U.S. at 434). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435. When a plaintiff recovers less than all the relief sought but the

9

relief obtained is nevertheless substantial, a fee award based on all hours reasonably expended may still be appropriate if the relief obtained justifies the expenditure of attorney time. See id. at n.11. However, if a plaintiff recovers only minimal damages that fall well short of the relief sought, a reduction in the lodestar may be necessary and appropriate. See Farrar, 506 U.S. at 114; Hensley, 461 U.S. at 434; see also Hyde v. Small, 123 F.3d 583, 585 (7th Cir. 1997) (district court must determine whether "the plaintiff was aiming high and fell far short, in the process inflicting heavy costs on his opponent and wasting the time of the court, or whether . . . the case was simply a small claim and was tried accordingly") (citations omitted).

Defendants contend that the lodestar figure must be substantially reduced because plaintiff achieved only limited success. I agree. Plaintiff complained that defendants violated her right to be free from race discrimination and retaliation by transferring her to the unit she complained about initially; refusing to postpone or reconsider the transfer after it was announced; failing to make her acting supervisor of the unit after the supervisor left to take the position of public assistance consultant; failing to give the position of public assistance consultant to her; failing to promote her to the position of supervisor after the supervisor of the unit was promoted; failing to respond to her complaints after a new supervisor was assigned to the unit; participating in or allowing a subsequent course of conduct that included imposition of unwarranted discipline,

issuance of a less than "good" performance evaluation, and interference with her relationships with other employees; and creating working conditions that resulted in her constructive demotion. Of all these challenged actions, the jury found for the plaintiff only with regard to the last.

Plaintiff does not deny that the verdict was a major disappointment. She emphasizes, however, that she has vindicated the public interest to some extent by prevailing on part of her First Amendment and Title VII retaliation claims, that she has succeeded in recovering her previous position, and that she never expected to recover a large award of compensatory damages. It is true that the lodestar "should not be reduced simply because [the] plaintiff recovered a low damage award." Cowan v. Prudential Ins., 935 F.2d 522, 526 (2d Cir. 1991). Moreover, when a plaintiff seeks and obtains both monetary and injunctive relief, "the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success." LeBlanc-Sternberg, 143 F.3d at 758. In this case, though, plaintiff's limited success does not justify the enormous expenditure of attorney time, even assuming the jury's findings in her favor were necessary to enable her to recover her job and might have some positive systemic effect.

Plaintiff also emphasizes that all her claims were legally and factually interrelated. I agree they were substantially related. But downward adjustments for incomplete success may be appropriate even when claims are interrelated, or there is only one claim. See Hensley, 461 U.S. at 435-36.

11

Plaintiff brought this case in an effort to avoid an unwanted transfer but DSS did not relent. After a period of inactivity, she litigated with a vengeance. As a result, a fairly typical public employee First Amendment/Title VII retaliation case, of which we have many, escalated into a bitter, protracted fight involving inflammatory charges of racial favoritism, reverse discrimination, and numerous acts of retaliation, virtually all of which proved to be unfounded.[7]

There is no formula for determining the extent to which the lodestar should be reduced to account for the limited nature of plaintiff's success. See Hensley, 461 U.S. at 436. An "equitable judgment" is required. Id. After careful consideration of the facts in light of the law and policy of fee awards in civil rights cases, I conclude that the lodestar should be reduced by 55 percent. Accordingly, plaintiff's fee award is $61,187.97.

B.  Costs

Plaintiff is also entitled to be reimbursed for reasonable out-of-pocket expenses normally charged to clients. Defendants oppose plaintiff's request for $6,964.65 on grounds of vagueness and excessive billing for transcripts. I find that the costs are adequately explained, and plaintiff has carried her burden of

---

[7] The limited nature of plaintiff's success becomes clearer when one considers the amount of time, money and effort that went into the case. For example, our rules limit summary judgment briefs to forty pages, which is almost always adequate in civil rights cases. In this case, the parties' briefs consumed hundreds of pages, far more than any other civil rights case in my experience.

establishing that the fees charged for transcripts are accurate and reasonable. Accordingly, plaintiff will be awarded an additional amount of $6,964.65.

III. Conclusion

For the foregoing reasons, plaintiff's petition for an award of fees and costs is granted in part and denied in part. Plaintiff is awarded fees and costs in the total amount of $68,152.62.

So ordered.

Dated at Hartford, Connecticut this 30th day of September 2003.

                                          Robert N. Chatigny
                                     United States District Judge