## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF CONNECTICUT

RONNI RABIN,                :
MARITZA AVILA,           :
JANE DOE,                    :
RONALD GREEN,            :
WENDE QALLAB,           :
LINDA SIEBERT, and      :
ALLISON PAYNE          :     CIVIL ACTION NO. 3:03 CV555
                                       (RNC)

        Individually and as      :
        representatives of all    :
        persons similarly situated,  :

        Plaintiffs,              :

VS.                           :

PATRICIA WILSON-COKER,  :
Commissioner of the Connecticut  :     JANUARY 7, 2005
Department of Social Services,  :
in her official capacity,       :

        Defendant.            :

### PLAINTIFFS' REPLY TO DEFENDANT'S MEMORANDUM
### IN OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS.

Plaintiffs have moved the Court, pursuant to 42 U.S.C. § 1988, for attorneys' fees

in the amount of $200,542[1] and costs in the amount of $3,456.11.[2] Plaintiffs seek this

---

[1] This is the amount sought by Plaintiffs' Amended Motion for Attorneys' Fees and Costs, filed this day. Plaintiffs' initial Motion, filed on October 14, 2004, sought $206,302.50 in attorneys' fees without the usually required fee affidavits of counsel and affidavits in support of counsels' hourly rates because the parties were, at the time of filing, in the preliminary stages of negotiating this matter, and the motion was filed to prevent any jurisdictional issues. Plaintiffs' amended motion 1) eliminates the 26.15 hours claimed by Attorney Gibau; 2) reduces the hours claimed by Attorney Toubman by approximately 22 hours; and 3) includes 26 additional hours expended by Attorney White in the preparation and defense of this fee petition. Supporting affidavits from counsel are attached to plaintiffs' amended motion.

[2] Defendant does not challenge the amount of the costs sought by the plaintiffs.

compensation for work performed in this case which resulted in the continuation of
Medicaid benefits, without interruption, for approximately 19,000 recipients, representing
over two-thirds of the plaintiff class, who were determined by the Court of Appeals to be
eligible for continued benefits under Connecticut's Extended Medicaid program for
employed families. Defendant seeks to reduce plaintiffs' initial request for attorneys'
fees by 67%, to $68,239.11, as follows:

1. By totally eliminating all compensation for work performed by Attorneys
   Bass, Toubman, and Gibau,[3] eliminating almost 200 hours of time expended
   by these attorneys as well as by eliminating 50% of the time expended by
   Attorney Potter, eliminating 59.9 hours of time expended by her, all based on
   the demonstrated lack of any need for more than two attorneys to prosecute
   this case;

2. By reducing 50% of the time expended by Attorneys White, Langer, and
   Potter before the District Court, eliminating another 200 hours of time
   expended, to account for work performed on the unsuccessful "ex parte"
   claim;

3. By an additional 10% across-the-board reduction in the time expended by
   Attorneys White, Potter, and Langer, eliminating 39.2 hours, for "inadequate
   time records including the use of vague and bundled entries;" and

4. By reducing the hourly rates of Attorneys White, Potter, and Langer.

---

[3] Plaintiffs have voluntarily eliminated any claim for attorney's fees for Attorney Gibau
in the interest of strengthening their claim for fees. Plaintiffs had initially claimed 26.15
hours of the over 200 hours expended by Attorney Gibau on this case.

Mindful of the Supreme Court's admonition that "[a] request for attorneys' fees should not result in a second major litigation," Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("Hensley"), plaintiffs respectfully state that the defendant's opposition is baseless. Plaintiffs are entitled to be fully and fairly compensated for their extraordinary hard work and undisputed success in this case.

## I.   There is No Basis for Eliminating 100% of the Time Expended by Attorneys Bass and Toubman, or 50% of the Time Expended by Attorney Potter

Defendant seeks to totally eliminate all payment for the work done by Attorneys Bass and Toubman, on the grounds that "the hours of attorneys Bass [and] Toubman . . . as the fourth [and] fifth . . . attorneys on the case should be excluded in their entirety since plaintiffs have not demonstrated that there (sic) services were necessary." Defendant's Memorandum In Opposition to Motion for Fees ("Def's") at 13. Similarly, defendant seeks to eliminate 50% of the hours expended by Attorney Potter, calling her a "third seat" whose hours should be cut because "plaintiffs failed to demonstrate that it was reasonably necessary to have more than two attorneys work on this matter." Id.

The work of multiple attorneys on the same litigation is not unreasonable per se nor does it presumptively constitute overstaffing. New York Association for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983). See also 2 Schwartz and Kirklin, Section 1983 Litigation: Statutory Attorneys Fees, 3d ed., 1997 ("Schwartz and Kirklin") § 4.4. Reductions in the allowable hours expended by multiple attorneys are warranted only if the attorneys are unreasonably doing the same work. "The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work . . . . An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the

customary practice of multiple-lawyer litigation." Johnson v. University College of the University of Alabama, 706 F.2d 1205, 1208 (11th Cir. 1983). See also American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1315 (M.D. Fla. 2003). Indeed, there is recent precedent in this district for an award of fees to a case staffed by five attorneys. See Tsonbanidis v. City of West Haven, 208 F.Supp.2d 263 (D.Conn 2002).

The docket in this case, combined with the time records submitted by the plaintiffs, evidences the need for a team of lawyers in this case. This case was filed, on an emergency basis, to stop the termination of Medicaid benefits to the plaintiff class on April 1, 2003 based on a public act which the legislature had approved on February 28, 2003. Immediately after passage of the public act, plaintiffs immediately set out to negotiate with the defendant Commissioner, research their causes of action, and prepare their complaint as well as their motion for class certification, motions for injunctive relief, brief in support, and related attachments. One month after passage of the public act, plaintiffs filed a three-count class action complaint and applied for and received an emergency temporary restraining order for the entire putative class.

Thereafter, plaintiffs 1) monitored the reinstatement of Medicaid benefits to the plaintiff class resulting from the issuance of the TRO; 2) wrote two additional, supplemental, briefs in support of their request for preliminary and permanent injunctive relief from the District Court which addressed a dizzying number of issues, including the income eligibility of the named plaintiffs for TMA, the possible sunsetting of the law, and the enforceability of the laws underlying each claim as well as the merits of such claims; 3) reviewed two separate motions for summary judgment filed by the defendant;

4) filed a reply to defendant's opposition to class certification together with a motion to intervene another named plaintiff; 5) took two depositions of key employees of the defendant; 6) reviewed documents produced in connection with that deposition; 6) conducted a hearing on the motion for preliminary injunctive relief; 7) filed and argued an unsuccessful motion for a stay pending appeal before the Court and then a successful motion for stay before the Second Circuit; 8) wrote two appellate briefs for the Second Circuit on an expedited scheduling order; and 9) made two trips to New York City to argue their appeal – all over the course of less than five months. Moreover, every aspect of this case was vigorously opposed by the defendant. That the work in this case had to spread out among more than two attorneys, particularly in the District Court, is hardly surprising. Even the defendant had three attorneys file appearances on her behalf. And, as a result of that team effort, plaintiffs successfully maintained uninterrupted benefits for the vast majority of the plaintiff class.

Other than her conclusory assertion that it was "unnecessary" for plaintiffs to have more than two attorneys work on this case, defendant identifies no work by Attorneys Toubman, Bass, or Potter that was duplicative of the work of any other attorneys on this case. While calling "excessive" the time that counsel spent "consulting", "meeting" and "reviewing," defendant identifies no specific hours claimed by these attorneys that were not reasonably necessary to the prosecution of this action. "Objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." Interfaith Community Organization v. Honeywell, Inter'l, Inc., 336 F.Supp.2d 370, 401 (D.N.J. 2004); American Charities for Reasonable Fundraising Regulation Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1314 (M.D. Fla.

2003). "Generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight." Id. citing Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1301 (5th Cir. 1981).

As defendant correctly notes, Attorney Potter performed a significant role at the district court level. "[S]he personally attended the depositions and assisted the co-lead counsel at the evidentiary hearing by sitting at counsel table. Her time records also indicate that she personally played a role drafting and amending the complaint and the briefs in this action." Def's at 12. Defendant fails to mention that, in addition to these roles, Attorney Potter also communicated with several potential and actual plaintiffs and prepared the motion to intervene Shantel Wells. As her time records indicate, Attorney Potter's work largely focused on the TMA claim including defendant's assertion that the statute had sunsetted. Her research and writing were the basis for the TMA sections of the supplemental briefs filed prior to the May 6th preliminary injunction hearing. Because of her extensive knowledge of the TMA claim, Attorney Potter's presence at the preliminary injunction hearing was invaluable to the plaintiffs' case.

Attorneys Bass and Toubman likewise contributed distinct work on this case for which plaintiffs are entitled to be compensated. Attorney Toubman, whose work was mostly at the district court level, initially contacted attorneys involved in similar litigation throughout the country to determine the legal merit of plaintiffs' potential claims and to obtain pleadings and briefs, which contributed to the efficiency of the litigation. See Baeder v. Secretary of Health and Human Services, 634 F.Supp.1041, 1047 (D.N.J. 1986) judgment vacated on other grounds, 836 F.2d 1345 (3rd Cir. 1987)(allowing time spent by plaintiffs' lawyer "consulting with other attorneys" in "learning about cases in other parts

7

of the country.") He also met with, and obtained affidavits from, several of the named plaintiffs. Attorney Toubman's work on the initial pleadings focused largely on plaintiffs' due process claim, which resulted in the initial preliminary injunctive relief that prevented the improper interruption of benefits to the plaintiffs. He did most of the initial legal research on the enforceability of the laws at issue in this litigation (the so-called "Gonzaga" issue). He assisted in the response to the defendant's Gonzaga arguments before the district court and at the initial appeal stage.

Attorney Bass, who is the Litigation Director for Greater Hartford Legal Aid, contributed extensively to the initial development of the case in the form of consultations with Attorneys Langer, White, and Potter about potential claims and defenses as well as review of the initial drafts of the complaint and injunctive relief motions. He assisted directly in the preparation for the TRO hearing and, after the hearing, with the issues relating to the reinstatement of the plaintiff class. He then consulted with counsel about the many issues raised by the Court and the defendant with respect to the claims in this case, which was used by counsel in preparing the two supplemental briefs. Attorney Bass did legal research into the extensive legislative history underlying the TMA statute and the administrative deference due HHS for its interpretation of that statute. He reviewed drafts of the many pleadings filed in the district court in the scant five weeks between the TRO and preliminary injunction hearings, including several prepared by Attorney Potter, whom he directly supervises. Attorney Bass helped schedule and prepare counsel for the two, day-long depositions of key DSS employees that were conducted only days before the preliminary injunction hearing. He attended that hearing and consulted with counsel during breaks on trial strategy. He reviewed the preliminary injunction decision and

helped counsel determine whether or not to appeal the decision. At the appellate level, he reviewed drafts of the appellate argument and helped moot Attorney White for not one, but two, appearances before the Second Circuit.

Defendant summarily dismisses the work done by both Attorneys Bass and Toubman as "consultative" in that some of the time sought by these attorneys is for time expended reviewing drafts of pleadings filed in court, and consulting with co-counsel. Not only is this the term "consultative" a gross generalization of the work performed by Attorneys Bass and Toubman, in fact, the time spent supervising attorneys, paralegals, and/or law students on litigation and the time spent meeting with co-counsel to divide up and review work and to discuss strategy is compensable. See Reid v. New York, 584 F.Supp. 461, 462 (S.D.N.Y. 1984)(compensating partner for time spent supervising the work of an associate); National Association of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1337 (D.C. Cir. 1982)(productive discussions among attorneys for case management purposes is compensable). As one federal court noted "[a]ttorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner." American Charities for Reasonable Fundraising Regulation, Inc. v. Penellas County, 278 F.Supp.2d at 1315.

Clearly the work performed by Attorneys Bass, Toubman, and Potter was essential to, and supportive of, the work by Attorneys White and Langer. Defendant cites not one hour of time expended by these attorneys that was duplicative of work performed by Attorneys White and Langer. See Id. at 1314 (requiring identification of specific time

that fee opponents contend should be excluded); Sugarman v. Village of Chester, 213

F.Supp. 2d 304, 311 (S.D.N.Y. 2002).

## II.    Hensley v. Eckerhart Does Not Require a 50% Downward Adjustment For Plaintiffs' Work on the Unsuccessful Ex Parte Claim

Defendant seeks a 50% across-the-board reduction in all time expended by

counsel before the District Court to account for the work plaintiffs did on the

unsuccessful ex parte claim. Def's at 6-8; 14-15. Defendant asserts that the Court is

required by Hensley to exclude the time expended by the plaintiffs on the ex parte claim

because the claim was "clearly predicated upon separate and distinct operative facts from

the TMA [Transitional Medicaid Assistance] claim. Id. at 7-8.

No downward adjustment is required in this case. Hensley only requires a

downward adjustment in the lodestar for unsuccessful claims that are 'distinct in all

respect' from the successful claims. If unsuccessful claims are related to successful

claims, the court may then lower the lodestar in relation to the overall success obtained.

However, Hensley makes it clear that, notwithstanding the existence of related

unsuccessful claims "where a plaintiff has obtained excellent results, his attorney should

recover a fully compensatory fee." Id. at 425. See also Tsombinadis v. City of West

Haven, 208 F.Supp.2d at 285; C.G. v. New Haven Board of Education, 988 F.Supp. 60,

67 (D.Conn. 1997). Significantly, defendant does not claim that plaintiffs' results in this

case were anything less than "excellent." Accordingly, she does not seek a discretionary

reduction for lack of success on related claims; rather, she seeks only the exclusion that

Hensley mandates for unrelated unsuccessful claims.

Defendant's mandatory reduction argument fails however because plaintiffs'

TMA and ex parte claims were related. Under Hensley, claims are considered to be

unrelated only if they present "distinctly different claims for relief based on different facts and different legal theories" such that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." Hensley at 434-35 (quotation omitted); LaBlanc-Sternberg v Fletcher, 143 F.3d 748, 762 (2d Cir. 1998). See also Schwartz and Kirklin at § 6.4. ("Successful and unsuccessful claims may be related even if they do not clearly share a core of facts and related legal theories provided the work done on such claims significantly overlapped so that time expended on both is essentially inseparable."). As Hensley notes, "unrelated claims are unlikely to arise with great frequency." Id. at 435.

Plaintiffs' TMA and ex parte claims are clearly not "distinctly different claims." Legally, the claims are related because the contention of the ex parte claim was that the defendant is obligated to conduct an independent review of every recipient facing termination to determine their possible eligibility for Medicaid under another coverage category, including the TMA coverage category for families with income from employment.[4] Factually, they are related because they arose from a common set of operative facts, namely the proposed termination of Medicaid benefits for 23,000 adults and 7,000 children in April of 2003 as a result the state legislature's enactment of new statutory eligibility limits. The work done on both claims in this litigation was clearly pursued with one goal in mind: to obtain preliminary and permanent injunctive relief that

---

[4] Plaintiffs' legal claims were also related by defendant's assertion of her "Gonzaga defense," i.e. defendant's argument that the federal statutes which form the basis for plaintiffs' TMA and ex parte claims were not enforceable under 42 U.S.C. § 1983 given the Supreme Court's decision in Gonzaga University v. Doe, 536 U.S. 273 (2002). For this reason, plaintiffs did not subtract time spent by Attorney Potter researching the applicability of Gonzaga to the ex parte statute, 42 U.S.C. § 1396a(a)(8), Def's at 14, because that defense was related to both claims.

would continue Medicaid benefits, uninterrupted, for as many of the approximately 30,000 recipients affected by Connecticut's reduction in the income eligibility limit as legally possible. Logically, this goal could not be achieved without prevailing on the TMA claim since the vast majority of the plaintiff class was families with employment income. All the work before the District Court – the drafting of the complaint, and motions for temporary and preliminary injunctive relief, the three briefs filed in support of injunctive relief, the motion for class certification and briefs in support, all the legal research relating to the drafting of such pleadings, as well as the taking of depositions, and the two hearings before the Court – was performed in pursuit of this singular goal.

Plaintiffs were under no obligation to maintain their time with an eye towards the different claims in this case. Such separation of time would have been virtually impossible with respect to such matters as drafting the complaint, the motions for class certification, and legal research on such matters as the defendant's Gonzaga defense. To the extent that particular attorneys expended time devoted exclusively to the ex parte claim -- i.e. with respect to drafting the discussion of that claim in two of the three "merits" briefs filed with the Court -- that time was excluded, although, arguably, such exclusion is not required by Hensley.

Even if defendant were correct in her contention that the ex parte and TMA claims are unrelated, the 50% reduction she suggests, for the time expended by counsel in the District Court, is excessive. Defendant seeks this 50% across-the-board reduction because, she reasons, "[t]he TMA claim on which the plaintiffs ultimately prevailed is a pure question of law" and therefore "[t]he majority of the undifferentiated time spent in

the District Court prior to June 9, 2003 was presumably expended on the unsuccessful 'ex parte review claim' which involved questions of fact." Def's at 15.

The principal claim in this case was always the TMA claim which impacted the vast majority of the class. Moreover, the TMA claim was not the "simple straightforward" claim of statutory construction asserted by defendant. Pursuit of this claim involved review of hundreds of pages of legislative history, as well as consideration of such matters as the enforceability of the statute under <u>Gonzaga</u>, and the possible "sunsetting" of the TMA provision. Nor was plaintiffs' TMA claim devoid of factual elements, as defendant sought to prove that the plaintiff class was not income eligible for TMA based on Connecticut's 1996 AFDC levels. A quick perusal of the hundreds of pages of pleadings filed in the District Court reveals that relatively few of those pages were devoted exclusively to plaintiffs' <u>ex parte</u> claim.

Given the undisputed relationship between plaintiffs' TMA and <u>ex parte</u> claims <u>Hensley</u> does not require any reduction. Rather, <u>Hensley</u> requires that plaintiffs receive a "fully compensatory fee" reduced only to the extent that hours claimed were duplicative, excessive, or not properly documented. As discussed herein, in Sections I and IV, there is no basis for any reduction on those grounds.

## III.    Plaintiffs' Counsel's Hourly Rates Are Fully Justified As The Prevailing Rates In The Community For Attorneys Of Similar Education And Expertise

Defendant seeks to reduce the hourly rates of Attorneys White, Langer, and Potter by $50 per hour (Attorneys White and Langer) and by $75 per hour (Attorney Potter). Defendant claims the hourly rates charged by counsel are "excessive, as demonstrated by a review of recent decision is this district awarding fees." Def's at 16.

In <u>Blum v. Stenson</u>, 465 U.S. 886 (1984), the Supreme Court held that fee awards under 42 U.S.C. § 1988 "are to be calculated according to the prevailing market rates in the relevant community. . . ." <u>Id</u>. at 895. In <u>Miele v. New York State Teamsters Conference Pension and Retirement Fund</u>, 831 F.2d 407 (2d Cir. 1987), the Second Circuit noted that, while <u>Blum</u> affords the district judge "some discretion in determining the hourly rate 'prevailing in the community'. . . that discretion must be exercised on the basis of rates charged to clients of private law firms." <u>Id</u>. at 409.

Plaintiffs have submitted the affidavits of partners in two of Connecticut's larger private law firms (Attorneys Margaret Mason of Tyler Cooper & Alcorn, LLP in New Haven and Francis Brady of Murtha, Cullina in Hartford) attesting to the reasonableness of plaintiffs' counsels' hourly rates. Moreover, over two years ago, Judge Covello, upheld the reasonableness of a $275 per hourly rate for Attorney White in <u>Christian Community Action v. Cisneros</u>, No 3:91cv00296(AVC), Slip Op., Aug. 26, 2002 at 17. (Opinion attached as Exhibit A). This hourly rate is consistent with the rates approved for counsel in <u>Tsombanidis v. City of West Haven</u>, 208 F.Supp. 2d at 274-77 (approving a rate of $275/hour for Attorney Jon Orleans based on 17 years of experience as a civil rights lawyer and a similar rate for another partner in the law firm who graduated in 1983 and specialized in zoning law). <u>Tsombanidis</u> noted that there is "ample . . . authority supporting a rate of $275 for an attorney in Connecticut with experience comparable to that of Attorney Orleans." <u>Id.</u> at 275 and fn.4.

The cases cited by the defendant contain no information about the education, experience, or expertise of the attorneys involved in those cases, sufficient to determine if their backgrounds are comparable to those of counsel. However, in one of the cases cited

by defendant, <u>Oliver v. Cole Gift Centers, Inc.</u>, No. 3:94cv02595 (GLG), 1999 U.S. Dist.

LEXIS 20547 (Dec. 24, 1999), the district court approved -- in 1999 -- hourly rates of

$275 for two partners.

    The defendant also claims that the Court can adjust the hourly rate for counsel "by

consideration of a number of factors, including the difficulty of the questions and the

skills requisite to perform the service" <u>citing</u> <u>Cohen v. West Haven Board of Police</u>

<u>Commissioners</u>, 638 F.2d 496, 505, n.14 (2d Cir. 1980). While <u>Cohen</u> authorized the

district court's use of variable rates, defendant fails to mention that the Second Circuit

did not <u>approve</u> the variable rates it awarded in that case. Instead, the Second Circuit

remanded the case because:

> [T]here is no indication that the [district] court established a lodestar
> figure based on the prevailing rates in the legal community. . . . The
> purpose of the fee award is to compensate an attorney for the reasonable
> value of his services. The fees that would be charged for similar work by
> attorneys of like skill in the area should have been the starting point for
> determination of a reasonable award. <u>Id</u>. at 506.

    Moreover, while variable rates may be permissible, the courts in this district --

and indeed this Circuit -- generally do not award variable rates. <u>Thomas v. Board of</u>

<u>Trustees of Regional Community Colleges</u>, 599 F.Supp. 331 (D.Conn. 1984)(citing

<u>Anunziato v. New Haven Board of Alderman</u>, Civ. No. 82-321(D.Conn. June 27, 1983));

<u>Gonzales v. Town of Stratford</u>, 830 F.Supp. 111, 115 (D.Conn. 1992). <u>See also, In Re</u>

<u>Agent Orange Product Liability Litigation</u>, 611 F.Supp. 1296, 1326 (E.D.N.Y. 1985)

<u>aff'd in relevant part,</u> 818 F.2d 226 (2d Cir. 1987).

    Defendant's argument that counsels' rate should be reduced because "the legal

skills of researching, writing, and making oral argument are not particularly novel,"

Def's at 16, was expressly rejected by the district court in <u>Thomas</u> in which Judge Dorsey

stated "it has been observed that . . . a differentiation [in rates]may tend to unduly depreciate counsel's expenditure of time of preparation and research, both of which contribute significantly to the efficient and effective functioning of the judicial process." Id. at 335-36.  That observation is particularly apt in the instant case which raised an issue regarding the interpretation of a particularly complicated statute with extensive legislative history and related, equally complicated, issues of enforceability under 42 U.S.C. § 1983 and whether the statutory provisions at issue were currently effective or had been sunsetted.[5]

### IV.    Defendants Present No Support For a 10% Across-The-Board Reduction of Fees For "Vague and Bundled" Entries

Defendant seeks a final 10% across-the-board reduction asserting that "counsel [failed] to keep time records that are sufficient precise [making it] difficult if not impossible to clearly determine the time expended on successful claims as opposed to unsuccessful claims."  (Def's at 10).  Defendant cites not one entry that is so vague that the Court cannot determine if the time described is or is not compensable.

The fact that counsels' entries do not permit distinction between work performed on the successful TMA and the unsuccessful ex parte claims is irrelevant.  For the reasons set forth, supra at Section II, plaintiffs' TMA and ex parte claims were clearly related and, as such, there is no basis under Hensley for a mandatory exclusion of the time

---

[5] Significantly, plaintiffs billed all travel time at ½ their hourly billing rates as per counsels past practice.  However, there is no mandate to reduce travel time.  Gonzales v. Town of Stratford, 830 F.Supp. at 115.; P.L. v. Norwalk Board of Education, 64 F.Supp.2d 61, 63 (D.Conn. 1999); C.G. v. New Haven Board of Education, 988 F.Supp. at 68.

expended on the unsuccessful ex parte claim.[6] As stated above, Hensley allows a

discretionary across-the-board reduction for lack of success on related claims, but

defendant does not seek -- and would not be entitled to -- such a discretionary reduction.

Respectfully submitted,
PLAINTIFF-APPELLANTS

By: _____
SHELLEY A. WHITE (ct05727)
New Haven Legal Assistance Association
426 State Street
New Haven, CT 06510
Phone: 203.946-4811 x.116
FAX: 203.498-9271
swhite@nhlegal.org

_____
SHARON LANGER (ct06907)
Connecticut Legal Service, Inc.
587 Main Street
New Britain, CT 06051
Phone: 860.225.8678 x.108
Fax: 860.225.6105
slanger@connlegalservices.org

_____
LUCY POTTER (ct23449)
Greater Hartford Legal Aid
999 Asylum Avenue, 3rd Floor
Hartford, CT 06105-2465
Phone: 860.541.5002
Fax: 860.541.5050
lpotter@ghla.org

---

[6] Even if the claims were unrelated under Hensley, defendant seeks a 50% across-the-board reduction in the time expended by counsel at the District Court level for supposedly faulty recordkeeping. She fails to explain why she would be entitled to an additional 10% reduction, including work done before the Second Circuit where the ex parte claim was not even part of the appeal.

GREG BASS (ct18114)
Greater Hartford Legal Aid
999 Asylum Avenue, 3rd Floor
Hartford, CT 06105
Phone: 860.541.5018
Fax: 860.541.5050
Gbass@ghla.org


JOANNE G. GIBAU (ct05730)
New Haven Legal Assistance Association
426 State Street
New Haven, CT 06510
Phone: 203.946.4811
Fax: 203.498.9271
jgibau@nhlegal.org


THEIR ATTORNEYS


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiffs-Appellants' Opposition to

Motion to Dissolve Injunction Pending Appeal has been mailed on this ___7th___ day of

January, 2004, first class, postage prepaid to: Hugh Barber, Assistant Attorney General, 55

Elm Street, P.O. Box 120, Hartford, CT 06141-0120.

Shelley A. White, Esq.